## PAGE v. MOORE.

### (District Court, E. D. Pennsylvania. June 10, 1910.)

#### No. 1.

1. BANKRUPTCY (§ 186*)—ADMINISTRATION OF ESTATE—PREFERENCES—"PER-- SON BENEFITED."

Where a mortgage payable to a corporation was assigned as collateral security to the first indorser of notes of the corporation, the first indors-- er being financially responsible, a president of the corporation as second indorser of the notes, having received no part of the funds derived from the notes, was not a "person benefited" by the assignment within the bank- ruptcy law (Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), so as to render him liable for the amount or value of the mortgage.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 186.*]

2. BANKRUPTCY (§ 303*)—ACTION BY TRUSTEE—EVIDENCE.

In an action by a trustee in bankruptcy of a corporation for a reas- signment to the corporation of a mortgage payable to it or a money decree· for its value on the ground that the original assignment was a prefer- ence, evidence held insufficient to show that the president of the corporation procured the assignment for the purpose of relieving him of a personal obligation as surety on a bond of the corporation as building contractor.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

Suit by Howard W. Page, trustee in bankruptcy of Moore & Co., Incorporated, against William G. Moore. Bill dismissed.

Thomas Raeburn White, for complainant.
Henry P. Brown, for respondent.

J. B. McPHERSON, District Judge. This is a suit to avoid a pref- erential transfer, and it has been brought in equity because the proper- ty transferred was a mortgage, and the relief prayed for is in the alter-- native—either a reassignment of the mortgage, or a money decree for its value. The facts are, briefly, these: Moore & Co., Incorporated, the bankrupt, was engaged in the business of constructing buildings. It was insolvent on January 15, 1908, and the defendant, who was its president, knew its financial condition. On that day the bankrupt as- signed a mortgage to Henry D. Moore, the defendant's father, as col- lateral security to protect his indorsement of the bankrupt's notes for $40,000. These notes were discounted for the bankrupt's benefit. The proceeds went into its treasury, and were afterwards paid out in the

usual course of business to laborers and materialmen and in the discharge of current liabilities. Henry D. Moore has paid the notes and still holds them as a liability of the bankrupt; but he is fully protected by the assignment of the mortgage.

The ground upon which it is sought to hold the defendant liable is that he was a "person benefited" by the assignment, and his counsel concedes that this is the only question for decision. The defendant was also an indorser upon the notes referred to; but, as Henry D. Moore was the first indorser, it is manifest that the assignment of the mortgage did not relieve the defendant from any liability upon his indorsement to which he would otherwise have been exposed. If the holder of the notes had called upon him to make his indorsement good, he could have compelled the first indorser, whose financial responsibility is ample and unquestioned, to reimburse him, and therefore the assignment of the mortgage to protect the first indorser did not relieve the defendant. Neither did he benefit directly by the assignment. The proceeds of the notes were not applied to any other obligations of the bankrupt upon which he was liable, and none of the money went into his pocket in any way. The trustee seeks to charge him upon a different ground altogether. I may note in passing that some stress is laid in the complainant's brief upon the averment that the defendant had agreed to indemnify his father against liability upon the latter's indorsement; but I do not think the evidence sufficiently supports the allegation, and I find the disputed fact in favor of the defendant. Laying this matter aside, therefore, it remains to consider the reason that is most insisted upon for holding the defendant to have been a "person benefited" within the meaning of the act (Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]). The further facts are these:

It appeared that the defendant had been a member of a partnership whose business was taken over by the bankrupt corporation. The partnership and the corporation had each entered into certain building contracts, and had been obliged to give bonds for the faithful execution of these agreements. The surety was an indemnity company, and the defendant had given counter security to protect the company. The amount was large, $120,000. The buildings were still incomplete when the mortgage was assigned. The bankrupt was in financial difficulties and needed money to go on with the contracts, and, if the bankrupt had been obliged to abandon the buildings, the indemnity company would have been compelled to make good whatever damage might thus have been caused to the owners of the buildings, and the defendant would thereupon have been liable over to the surety. In this situation the trustee contends, to state his position in the language of his counsel:

"But in any aspect of the matter respondent was the party to be benefited, for it is not disputed that the whole purpose of raising the $40,000 was to enable the bankrupt to gain further credit, and by this means to complete the buildings then under contract, and which respondent was under a personal liability to complete. Even if respondent's view of the assignment of the mortgage be taken in its entirety—that it was executed and delivered in January to his father, and that he was under no obligation of any kind to reimburse him—yet how can it be doubted that respondent was the real party to

be benefited by the transaction? By causing the bankrupt to assign away its mortgage, it was enabled to raise money sufficient to increase its credit and complete the buildings then under contract, and thereby relieve respondent of a personal obligation amounting to $120,000. The whole transaction was in pursuance of a plan to escape an impending disaster at the expense of innocent third parties, and an essential and necessary part of the scheme was the withholding of this mortgage from record until this could be done. The evidence clearly shows the whole thing was engineered by respondent to gain his own ends."

I am not advised of any decision which carries the doctrine of "benefit" as far as this. Assuming, however, that a trustee might maintain the legal position successfully, he must first of all establish the underlying facts, and in my opinion the evidence in the present case is not sufficient. As I look at the matter, the trustee has not proved that the part taken by the defendant in the assignment of the mortgage to his father had the object described in the foregoing quotation. The defendant knew that the bankrupt was financially embarrassed and needed money to carry on its contracts; but I see no ground to believe that he devised and helped to carry out such a scheme as the trustee supposes. It is much more likely—and I think the evidence so indicates— that he believed the need for money to be the not unusual situation of any business venture, and that if funds could be raised by an adequate loan the contracts could be finished without ultimate loss, and perhaps even at a profit. It seems clear that the present unfortunate condition of affairs is due to the sanguine anticipations of comparatively inexperienced builders, who undertook much more than they could manage, and after suffering some unexpected disasters ended in a court of bankruptcy. As a consequence, losses large in the aggregate have fallen upon a number of persons—among them, upon the defendant himself—but the misfortune of one man cannot be shifted to the shoulders of another unless the latter has been to blame.

A decree may be entered dismissing the bill, with costs.