NICHOLS v. ELKEN et al. SAME v. FARMERS' & MERCHANTS' NAT. BANK OF HATTON, N. D. SAME v. HEGGE.

(Circuit Court of Appeals, Eighth Circuit. August 23, 1915.)

Nos. 4372-4374.

1. BANKRUPTCY ⬤=166—PREFERENCES—INSOLVENCY—NOTICE.

Mere suspicion that a debtor was insolvent is not sufficient to charge creditors with notice of insolvency and make the debtor's payments a preference; but there must be evidence of facts sufficient to put a prudent person on inquiry, which, if pursued would show insolvency.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250-253, 255-258; Dec. Dig. ⬤=166.]

2. APPEAL AND ERROR ⬤=1009—REVIEW—FINDING OF CHANCELLOR.

When the chancellor has considered conflicting evidence, and made his findings and decrees thereon, they are presumptively correct, and unless an obvious error of law or some serious mistake in the consideration of the evidence appears the findings must stand.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970-3978; Dec. Dig. ⬤=1009.]

Appeal from the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Separate suits by George E. Nichols, as trustee in bankruptcy of Irving Tilden, a bankrupt, against M. L. Elken and another, a copartnership, against the Farmers' & Merchants' National Bank of Hatton, N. D., and against O. M. Hegge. In each case the bill was dismissed, and complainant appeals. Affirmed.

These are separate suits by the appellant in each case as trustee in bankruptcy of Irving Tilden, a bankrupt, to recover from the several defendants a preference alleged to have been paid by the bankrupt to each in violation of Bankr. Act July 1, 1898, c. 541, 30 Stat. 544. The cases are substantially the same in their facts, except in the amount of the alleged preferences. In each case the bill was dismissed on final hearing at the complainant's costs for want of equity, and he prosecutes separate appeals to reverse such decrees.

Watson & Young and E. T. Conmy, all of Fargo, N. D., for appellant.

F. W. Ames, of Mayville, N. D., for appellees.

Before ADAMS, Circuit Judge, and TRIEBER and REED, District Judges.

REED, District Judge. As each case involves substantially the same questions, they may be disposed of in one opinion.

Irving Tilden was adjudicated a bankrupt by the District Court of the United States for the District of North Dakota, November 29, 1909 (whether upon his own petition or the petition of creditors does not appear), and the plaintiff, George E. Nichols, was in due time appointed trustee of his estate. At the time of his adjudication the bankrupt lived in Fargo, N. D., and previously lived in Hatton, that state, not far from Fargo. He was a building contractor, and for some

time had been engaged in buying real estate at or near Hatton and Fargo and building thereon, or otherwise improving the same, and selling it. In such dealing he had incurred liabilities to banks for borrowed money, and to others for building material and other purposes, to the amount of some $85,000, which he was unable to pay, and was insolvent, and had been for some time prior to the adjudication in bankruptcy. Among the banks to whom he had become indebted in quite large amounts was the Farmers' & Merchants' National Bank of Hatton, N. D., the defendant in one of these cases, and to the defendants M. L. Elken and G. L. Elken, a copartnership doing business under the name of Elken Bros., one of whom was an officer of said bank, and to the defendant O. M. Hegge, of Hatton. He also became indebted to the First National Bank of Fargo for nearly $7,000, beginning in July, 1909, of which bank the appellant trustee is, and was when such indebtedness was incurred, the cashier; also to other banks in Fargo and nearby cities.

About November 1, 1909, the bankrupt paid from his estate to the defendants Elken Bros. some $2,000 to apply upon his indebtedness to them; and to the defendant Farmers' & Merchants' National Bank $1,571 upon his liabilities to that bank, and to the defendant Hegge $450. The trustee, by proper petition or bill of complaint in each of the cases, alleged these several payments to be voidable preferences under the Bankruptcy Act, and asks judgment or decree against them, respectively, for the amount of the payment to each. Each defendant admits the adjudication of Tilden as a bankrupt and the payment by him to them respectively of the amounts and at the time as alleged, but denies that it was a preference or otherwise in violation of the Bankruptcy Act, denies knowledge of or reasonable cause to believe that Tilden was insolvent when such payments were made, and each alleges that it was received by him or it in good faith as a payment upon the indebtedness of Tilden to them respectively.

That Tilden was insolvent when these payments were made to the several defendants cannot be successfully controverted under the testimony. The only question for determination therefore is: Did the several defendants, or the person acting for them in the receipt of such payments, know or have reasonable cause to believe that Tilden was insolvent, and that a preference to the respective defendants would be the result of such payments? This is a question of fact, which must be determined from the evidence applicable to the respective cases.

It was agreed that the testimony taken should apply as far as applicable to all three of the cases, the same as though taken in each case separately. George E. Nichols, the complainant, testified that he was appointed trustee in bankruptcy of Irving Tilden December 16, 1909; that the schedules showed his liabilities to be about $85,000; that from his assets he had collected some $3,400, and had paid upon claims allowed against his estate some $2,100; that aside from the claims involved in these suits he knew of no other assets; that it is pretty hard to state for how long the bankrupt had been insolvent, but he would say six or eight months before his adjudication; that a large part of the assets turned over to him as trustee were equities

in lands which the bankrupt had bought on contracts and made small payments thereon; that the balance due was so large that the bankrupt could not raise money enough to take up the contracts; that the taxes even had not been paid; that, acting for the bank of which he (the trustee) was cashier, he had made loans to Mr. Tilden, the first $1,200 on July 7, 1909; the second $2,400 on October 26, 1909, and the next $3,200 November 1, 1909, for which Tilden gave him nothing but forged notes for security; that the larger part of Tilden's indebtedness grew out of these land deals, probably within a year or a year and a half prior to the bankruptcy; that Tilden moved to Fargo some six or eight months before the adjudication. Outside of his liabilities on these lands he knew of no other large indebtedness. In addition to those liabilities was his indebtedness to the defendants in these suits and to banks in Portland, Mayville, Northfield, Hatton, and Fargo.

The plaintiff took the deposition of Tilden in Texarkana, Tex., in February, 1914, where he was then residing, and therein he testified that in 1908 and 1909 he resided at Hatton and Fargo, N. D.; that on and prior to November 1, 1909, he resided at Fargo, and was then insolvent, and remained so until he was adjudicated bankrupt on November 29th; that he owed the Farmers' & Merchants' National Bank a note for $2,700, which was not due until November 10th; that he then owed M. L. Elken individually $1,100, and Elken Bros. two notes for $1,100 each, and one for $1,200, that were past due. He also owed the defendant Hegge a balance of about $450; that he placed as collateral to the note of $2,700 to the defendant bank, about $1,800 of forged notes, that is, notes of third parties whose names to them he had signed without their authority; among these was one purporting to be signed by C. J. Storkson, to mature November 1, 1909. The notes given to M. L. Elken and Elken Bros. were also secured by notes, some of which were forged. He also testified, in substance, that the defendants Elkens and the cashier or assistant cashier of the defendant bank and Hegge knew of his insolvency at the time the payments were made to them respectively. It was admitted on the hearing that Tilden had been convicted of the offense of forging these notes, or some of them. The officers of the defendant bank, Elkens, and Hegge testified that they did not know of Tilden's insolvency when the payments were made to them, respectively, or know of the forged notes until after such payments were made. The forgeries were discovered about the 1st of November. There was a sharp conflict in the testimony. If that in behalf of the trustee in each case is to be believed the decree should have been for the plaintiff, and the cases should be reversed; if that in behalf of the defendants is to be believed, the decrees are right and should be affirmed. It would serve no useful purpose to further state or review the testimony, for it is such as not likely to become a precedent for future cases, and would be of interest only to the immediate parties interested in these suits.

[1, 2] Mere suspicion, of course, is not sufficient to charge the defendants with knowledge of, or reasonable cause to believe, Tilden's insolvency at the time of these payments; but there must be evidence

of facts sufficient to put a reasonably prudent person upon inquiry, which, if pursued, would show that Tilden was insolvent and that a preference would be the result of making these payments. Tilden had been convicted of forging some, at least, of the notes deposited by him with the defendant bank and the Elkens as security for the loans made to him by them, and his testimony is in conflict with the testimony of the defendants. The testimony of defendant Hegge, who acted for himself in his own transactions with Tilden, and to some extent at least for the defendant bank and the Elkens in the matter of the payments to them, respectively, was taken by deposition in the fall of 1913, but was read by the defendant as cross-examination only under the statute of North Dakota. He was also examined orally in open court. He testified that he acted as agent for Tilden in his building dealings at or near Hatton. The testimony of the other defendants was taken orally in open court. The trial court was therefore in a better position to determine the weight of the testimony of the respective parties and witnesses in these suits than this court is. The rule is firmly established by the Supreme Court and has been repeatedly applied by this court: That when the chancellor has considered conflicting evidence, made his findings and decree thereon, they will be held by appellate courts to be presumptively correct, and unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence, the findings must stand. Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Coder v. Arts, 152 Fed. 943, 82 C. C. A. 91, 15 L. R. A. (N. S.) 372; De Laval Separator Co. v. Iowa Dairy Separator Co., 194 Fed. 423, 114 C. C. A. 385.

The trustee testified that he, acting for the First National Bank of Fargo of which he was cashier, personally loaned to the bankrupt July 7, 1909, $1,200, and on October 26 and November 1, 1909, $3,-600. This was about the time that Tilden made the alleged preferential payments to the defendants. It is incredible that he would then have made such loans, if Tilden was generally known to be insolvent, or there was reasonable cause in business circles in Fargo or Hatton for believing him to be. This is a circumstance well worthy of consideration in determining whether or not the defendant bank and Elken Bros. knew or had reasonable cause to believe that Tilden was insolvent at the time of such payments. A careful reading and consideration of the entire evidence fails to convince that any error of law or mistake of fact intervened in the decision of the trial court of the questions presented in either of these cases. If the testimony of Tilden was not considered by the court, as it well might not have been, there is nothing of substance to sustain the contention of the trustee as to the defendant bank and Elken Bros.

There is less reason for upholding the decree in favor of Hegge than in either of the other cases, for upon his own testimony which is quite evasive and in many instances inconsistent, there is much reason for holding that he knew or had reasonable cause to believe that Tilden was insolvent and that the payment to him would result in a preference; but as the trial court upon all the facts found in his favor we will not under the rule just announced, disturb the

finding in the case against him. In fact, if the decree in either of the cases had been the other way we would not feel disposed to disturb it. The decree, therefore, in each of the cases should be affirmed. And it is accordingly so ordered.