In re CAMPION et al.

(District Court, N. D. New York. April 1, 1919.)

1. BANKRUPTCY ⬳166(3)—PREFERENCE—KNOWLEDGE OF INSOLVENCY.
      Statements by a debtor to the creditor's agent, who was seeking to col-
   lect past-due debts for which the debtor had given checks that the banks
   dishonored, that the debtor had not and could not obtain money to pay
   the debts, that its real estate was mortgaged for all it was worth, and
   that there were judgments outstanding against it, gave the creditor rea-
   sonable cause to believe that the debtor was insolvent, so that he knew
   that the enforcement of a chattel mortgage then taken by him would be
   a preference, under Bankruptcy Act July 1, 1898, § 60b (Comp. St. § 9644).

2. BANKRUPTCY ⬳166(1)—PREFERENCE—INTENT OF PARTIES.
      The intent of a debtor to give a preference and the intent of the cred-
   itor to obtain a preference are immaterial, in determining whether a pref-
   erence was actually obtained.

3. BANKRUPTCY ⬳166(3)—PREFERENCE—KNOWLEDGE OF CREDITOR—SUSPI-
   CIOUS FACTS.
      A creditor is chargeable with knowledge of all facts of debtor bank-
   rupt's insolvency which its agent would have obtained, had he made the
   inquiries which the facts he knew required.

4. BANKRUPTCY ⬳228—FINDINGS OF REFEREE—CONCLUSIVENESS.
      A decision of the referee in bankruptcy, who saw the witnesses and
   heard their testimony on a question of fact, should not be disturbed, if it
   is sustained by the evidence.

5. BANKRUPTCY ⬳303(1, 3)—PREFERENCE—BURDEN OF PROOF.
      The burden is on the trustee in bankruptcy to show that a creditor,
   to whom transfer was made shortly before bankruptcy, had reason to
   believe that a preference would result; but the mere fact that the cred-
   itor's agent testified differently from the debtor on that issue does not
   leave the trustee's case unproved.

6. BANKRUPTCY ⬳166(3)—PREFERENCE—KNOWLEDGE OF CREDITOR—DUTY TO
   INQUIRE.
      A creditor, who has knowledge of facts giving him reasonable cause to
   believe that the enforcement of a transfer would effect a preference, has
   a duty to inquire as to the solvency of the debtor, and cannot willfully
   remain in ignorance thereof.

In Bankruptcy. Proceeding against George A. Campion, Sr., and
others, as individuals and as copartners of the firm of Campion &
Sons. On review of a decision of a referee awarding a fund of about
$1,217 to the trustee as against the claim of the William Klein Com-
pany under a chattel mortgage. Order of the referee affirmed.

George J. Hatt, 2d, of Albany, N. Y., for trustee.
George H. Zwick, of Albany, N. Y., for claimant.

RAY, District Judge. October 18, 1916, the now bankrupt, Cam-
pion & Son, of Albany, N. Y., a copartnership, was insolvent within
the meaning of the Bankruptcy Act, which fact is conceded by its
attorney in his brief in the following language:

   "The William Klein Company admits (1) that Campion & Sons were in-
solvent October 18, 1916, but not that they knew the fact."

October 18, 1916, the now bankrupt was doing business as an under-
taker in the city of Albany, and was indebted to the claimant, William

Klein Company, a corporation of the state of Connecticut, having its principal place of business at Thomsonville, in that state, in the sum of about $1,000, which was all past due. The claimant's representative, William Klein, Sr., visited the place of business of the now bankrupt on said 18th day of October and demanded payment, and was very urgent and insisted for immediate payment, or in default of payment for security. The Klein Company, so called for brevity, had some knowledge that Campion & Sons were in financial embarrassment to some extent, as it then held past-dated checks of that firm and other checks, one or more of which had been dishonored by nonpayment. The past-dated checks were given to Mr. Klein, Sr., about two weeks before the 18th day of October, on an occasion when he visited the place of business of Campion & Sons and asked for money on account. One or more of these checks was in place of other checks given before that which had not been paid. The nonpayment of the checks resulted in the visit of October 18, 1916. On that day the representative of the Klein Company threatened the Campion Company that if they "did not do something that day [referring to payment] they would close our [that of the Campion Company] place up." John E. Campion says Klein said that day:

"Mr. Klein told me that something had to be done immediately or he would close us up. * * * I pleaded with him that I did not have any money; I could not get any money; I could not borrow any money, and also that I could not raise any money, because I had enough of judgments against me at that time. I said, also, that one of them was with the Allen & Arnink Company, Miller & Co., and the Champion Chemical Company. I said I could not raise any money for them. He said, 'How about putting a mortgage on the house?' I said, 'I don't think it is worth anything, on account of the other two mortgages on there.' I told him, 'I could not get any money, because I had no money to get, or no money that I could get; I knew the condition I was in, and I told him that there was no need of my promising him, that I could not get it.'"

In fact, the house referred to was mortgaged to its full value, and there were three judgments docketed against the copartnership of Campion & Sons. These were of record and gave notice to all the world. The judgments, aggregating over $2,500, were docketed October 5 and 13, 1916.

[1] No representations were made as to the actual solvency or insolvency of the firm of Campion & Sons, or as to the solvency or insolvency of its individual members, but Klein, representing the Klein Company, made no inquiries on that subject. However, Klein was informed that Campion & Sons had no money to pay with, and could not pay that day, or raise money, and that the real estate was mortgaged. The Klein Company held the dishonored checks, and very clearly had information that day which would put a man of ordinary intelligence having an interest in the matter on inquiry as to the solvency of the firm of which it was asking and about to take security for an antecedent and past-due indebtedness. If the facts known to Klein and the statements made to him under the circumstances would not put a creditor urging payment, and, in default of payment, security for a past-due indebtedness, on inquiry, it is difficult to imagine what would. The Klein Company was chargeable with notice

of the provisions of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [Comp. St. §§ 9585–9656]). It is presumed that the Klein Company knew the law and acted with reference to such knowledge. Section 60a (section 9644) of the act provides:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, * * * procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Section 60b of the act provides:

"If a bankrupt shall have * * * made a transfer of any of his property, and if, at the time of the transfer, * * * and being within four months before the filing of the petition in bankruptcy * * * the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

That giving a chattel mortgage is a transfer within the meaning of the Bankruptcy Act is settled. That the effect of the enforcement of the chattel mortgage given on the 18th day of October would be to pay that company, a creditor, in full, and give that firm a greater percentage of its debt than any other of its creditors of the same class, of which Campion & Sons had a number, is beyond all question.

On the 18th of October, 1916, being urged as stated, Campion & Sons finally gave the Klein Company a third mortgage on the house and lot, accompanied by a bond, and as further or collateral security gave it the chattel mortgage in question under which it claims. There is nothing in the real estate security for the Klein Company. It seeks to hold the proceeds of the personal property mortgaged. These mortgages were given within four months of the filing of the petition in bankruptcy.

In Nichols v. Elken et al., 225 Fed. 689, 140 C. C. A. 563, the court held:

"Mere suspicion that a debtor was insolvent is not sufficient to charge creditors with notice of insolvency and make the debtor's payments a preference; but there must be evidence of facts sufficient to put a prudent person on inquiry, which, if pursued, would show insolvency. When the chancellor has considered conflicting evidence, and made his findings and decrees thereon, they are presumptively correct, and unless an obvious error of law or some serious mistake in the consideration of the evidence appears the findings must stand."

In Re States Printing Co., 238 Fed. 775, 151 C. C. A. 625, the court (C. C. A. 7th Circuit), held:

"Under Bankruptcy Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (Comp. St. 1913, § 9644), making void a transfer within four months before the filing of the petition in bankruptcy, if the bankrupt was then insolvent, and the transfer operated as a preference, and the person receiving it had reasonable cause to believe that it would effect a preference, it is not necessary that the creditor actually knew that the debtor was insolvent, but the preference is void if he had information sufficient to have put an ordinary business man

on inquiry as to facts which would show insolvency, and his failure to make such inquiry, is no excuse."

At page 777 of 238 Fed., at page 627 of 151 C. C. A., the court said:

"Failure actually to investigate will afford no excuse, where the creditor's information was sufficient to have put the ordinary business man upon inquiry. In re McDonald & Sons (D. C.) 178 Fed. 487; Rogers v. Page, 140 Fed. 596, 72 C. C. A. 164; McElvain v. Hardesty, 169 Fed. 31, 94 C. C. A. 399; Huttig Mfg. Co. v. Edwards, 160 Fed. 619, 87 C. C. A. 521."

[2] Intent to give a preference and intent to obtain a preference have nothing to do with the question of actually obtaining a preference. The questions under the act as amended are: (1) Was the debtor insolvent? (2) Within four months of filing the petition did he make a transfer of any of his property? (3) Would the effect of the enforcement of such transfer be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class would receive? (4) Did the person receiving it, or to be benefited thereby, or his agent acting in the matter of obtaining it, then have reasonable cause to believe that the enforcement of the transfer, here the taking or enforcement of the mortgage, would effect a preference; that is, give to the creditors receiving the transfer a greater percentage of his debt than any other of such creditors of the same class would or will receive? Answer these questions in the affirmative, and we have a preference voidable by the trustee. Reasonable cause to believe assumes that the one receiving the transfer, or his agent, had knowledge of the insolvency, or such information on that subject as would put a man of reasonable intelligence on inquiry, and that means of obtaining knowledge was at hand and knowledge obtainable, and that knowledge would have been obtained if inquiry had been made.

It is not to be assumed that the creditor will refuse to give information, or that he will give false information. Here the partner in the firm of Campion & Sons did almost everything he could, except to say outright: "We are insolvent and cannot pay our debts in full." He told of the mortgage or mortgages on the real estate, and of the judgments they could not pay, and the fact they had no money, and the further fact they had no means of getting it, whereupon the agent of the Klein Company insisted on and took a third mortgage on the real estate and a chattel mortgage on all the personal property, subject to a prior mortgage, and made no inquiries as to solvency or insolvency—no inquiries as to the value of the entire assets of the firm or the total of its liabilities.

[3] The circumstances were such that if Klein had inquired, as it was his duty to do, he might and probably and undoubtedly would have obtained all necessary and full information and knowledge. The Klein Company is chargeable with all such knowledge as it might and probably would have received and obtained, had its representative inquired; that is, with knowledge of the actual insolvency of Campion & Sons.

In Grant v. National Bank, 97 U. S. 81, 24 L. Ed. 971, the court in the opinion said:

"It is not enough that a creditor has some cause to suspect the insolvency of his debtor, but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt."

That decision was rendered under the act of 1867, but it was before the committee on the judiciary and Congress when the act of 1898 was passed, and the language of the two acts in this regard are the same, or substantially so. However, in the instant case Mr. Klein had much more than suspicion. Mr. Klein was informed of unpaid mortgages and of unpaid judgments recently obtained and docketed, and of the absence of money wherewith to pay, and of credit wherewith to obtain money, and of lack of credit at the bank, as the Klein Company then held unpaid and dishonored checks of Campion & Sons. This last fact alone would not give reasonable cause to believe necessarily, but in the instant case it was one of several facts of which Klein was informed, all pointing to actual insolvency. "One swallow does not make a summer," but when we see the sky full of swallows homeward flying, and are not aware of the season of the year, we well many inquire, "Is not summer here?"

[4] This case presented a question of fact for the decision of the referee, and his finding and decision should not be disturbed, as it is sustained by the evidence. He saw the witnesses and heard them give their testimony. He was to judge of their credibility and the accuracy of their testimony. He, far better than the court is, was able to judge what the facts were as to the transaction of October 18th.

I have not commented on the claim to this money of the Rock Falls Manufacturing Company, which held a prior chattel mortgage on most of the property covered by the chattel mortgage given to the Klein Company, but which had not been properly renewed, so as to make it good against the trustee in bankruptcy. The existence of that mortgage, of which the Klein Company was informed, was further reason for reasonable cause to believe on the part of the agent of the Klein Company. The invalidity of that mortgage as to the trustee does not help the Klein Company in this case. The Rock Falls Company has accepted the decision of the referee.

[5, 6] It is true that the burden of showing the existence of reasonable cause to believe was on the trustee, but it is not true that the two witnesses, Klein and Campion, who testified as to the transaction of October 18th, stood or stand on an equal footing, and were and are of equal credibility, and that therefore the testimony of the one "offsets" that of the other, and leaves the case of the trustee unproved. Neither is it true that no duty rests on a creditor, seeking payment or security, to make inquiry as to solvency or financial conditions until he has received such information as gives him reasonable cause to believe that insolvency exists and that the transfer will operate as a preference. When facts come to the knowledge of a creditor, seeking payment or security, which do give him reasonable cause to believe that the enforcement of the transfer would effect a preference, he has such knowledge as will avoid the transfer. A person cannot willfully remain in ignorance of the fact of insolvency, when he has rea-

sonable cause to believe that insolvency exists. He may not have reasonable cause to believe at a given time, and still have knowledge of such facts as would put a reasonable man of intelligence on inquiry as to financial condition; and if he does have such knowledge, it is his duty to inquire, and such inquiry may disclose the facts which give him the necessary reasonable cause to believe the enforcement of the transfer would work a preference.

In this case the facts actually disclosed and made known to the Klein Company, and Klein, the agent, made it the duty of the agent, Klein, to inquire, if not already satisfied the Campion Company was insolvent, as to the actual facts. If in doubt about the mortgages and judgments, and want of credit, and inability to pay, etc., he could have inquired. Every disclosure made indicated insolvency. Klein, who was urging and insisting on security by mortgage, actually avoided receiving the information which was at hand by failing to make the inquiry a reasonably prudent man would have made.

The order of the referee is affirmed.

There will be an order accordingly.