Argued at Pendleton October 30, affirmed December 19, 1922.

# HOMAN *v.* HIRSCH ET AL.

### (211 Pac. 795.)

**Bankruptcy—To Defeat Deed, Trustee must Show Transfer During Insolvency Operating as Preference in Favor of Transferee to His Knowledge.**

1. To defeat a deed to a creditor within four months prior to the filing of a petition in bankruptcy against grantor, under Bankruptcy Law, § 60b (U. S. Comp. Stats., § 9644), the trustee in bankruptcy must show a transfer of the property, that grantor was insolvent at the time, that the transfer operated as a preference in favor of transferee over other creditors of the same class, and that such creditor had reasonable cause to believe that it would effect a preference as defined by Section 60.

**Bankruptcy—Deed to Bank Cashier as Security for Drafts Deposited as Cash Subject to Check Held Preference.**

2. A transfer of property by a deed to a bank cashier as security for drafts deposited as cash subject to check *held* a preference within Bankruptcy Law, § 60 (U. S. Comp. Stats., § 9644), as enabling the bank, by setting off the amount on deposit against the indebtedness arising from the dishonor of the drafts to obtain a greater percentage of its indebtedness than other creditors of the same class.

**Bankruptcy—To Prevent Foreclosure of Deed as Mortgage, Grantor's Trustee in Bankruptcy must Prove Such Notice of Prior Right as Would Make It Fraudulent for Grantee to Hold the Property.**

3. While a creditor, to whom property is conveyed by a debtor against whom a petition in bankruptcy is subsequently filed, cannot foreclose the deed as a mortgage, if he had reasonable cause to believe that grantor was insolvent, and that the transfer would operate as a preference, there must be proof of such notice as would not merely excite the suspicions of a cautious and wary person that it is so clear and undoubted with respect to the existence of a prior right as to make it fraudulent for him to take and hold the property.

**Courts—Decision in Case Decided Under Former Act Held Controlling in Action Under Amended Act Containing Practically Similar Language.**

4. A decision that, to invalidate a security taken for a debt under Bankruptcy Act of 1867, the creditor must have such knowledge of facts as to induce a reasonable belief of his debtor's insolvency, *held* controlling in a creditor's suit, subsequent to the enactment of the present Bankruptcy Law, § 60b (U. S. Comp. Stats., § 9644), which contains practically similar language with respect to the circumstances under which such transfers shall be voidable, by the

Exercise of right of setoff in bankruptcy, see notes in 47 **Am. St. Rep.** 580; 15 **Ann. Cas.** 307; **Ann. Cas.** 1916C, 990.

trustee, to foreclose as a mortgage a deed given by one against whom a petition in bankruptcy was subsequently filed as security for drafts deposited as cash subject to check, where the decision in the former case was before the Committee on Judiciary and before Congress when the act was amended.

Bankruptcy—Grantee of Land as Security for Drafts Deposited as Cash Subject to Check Held not to have had Reasonable Cause to Believe Grantor was Insolvent, and That Transfer Would Effect Preference.

5. A bank cashier to whom property was conveyed as security for drafts deposited as cash subject to check by one against whom a petition in bankruptcy was subsequently filed *held* not to have had reasonable cause to believe that grantor was insolvent or that the transfer would effect a preference, in violation of Bankruptcy Law, § 60b (U. S. Comp. Stats., § 9644), where all the drafts except the last three were paid and there was abundant testimony that grantor stood well financially in the town wherein the bank was located.

Bankruptcy—Insolvency at Date of Transfer Held not Shown by Schedule Made Out by Referee in Bankruptcy More Than Eight Months Afterward.

6. That a bankrupt was insolvent at the time of a conveyance *held* not shown by a schedule of his assets and liabilities made out more than eight months afterward by a referee in bankruptcy.

Bankruptcy—Trustee can Recover from Bankrupt's Debtor Only What Bankrupt Could have Recovered.

7. As respects right of setoff, the trustee can recover from the bankrupt's debtor only what the bankrupt himself could have recovered.

Bankruptcy—Bank's Claim for Amount of Dishonored Drafts Held Subject to Setoff of Amount Credited to Drawer's Bank's Account.

8. Under Bankruptcy Act, § 68 (U. S. Comp. Stats., § 9652), as to setoff, a bank's claim for the amount represented by dishonored drafts deposited as cash subject to check by one against whom a petition in bankruptcy was subsequently filed was provable against the bankrupt's estate, and hence, though not proved, was subject to setoff of the amount credited to the latter's account.

Appeal and Error—Trial Judge's Determination of Disputed Questions of Fact Entitled to Respect, Though not Conclusive.

9. The trial judge's determination in equity suit of disputed questions of fact is entitled to respect, though not conclusive on appeal.

From Malheur: Dalton Biggs, Judge.

In Banc.

AFFIRMED.

For appellant there was a *brief* over the names of *Mr. Wells W. Wood, Messrs. Davis & Kester* and

*Messrs. Brooke & Gallagher,* with an oral argument by *Mr. P. J. Gallagher.*

For respondent there was a brief over the names of *Mr. William E. Lees* and *Messrs. Flegel, Reynolds, Flegel & Smith,* with oral arguments by *Mr. Lees* and *Mr. John W. Reynolds.*

BURNETT, C. J.—This is a suit to foreclose as a mortgage a deed purporting on its face absolutely to convey to the plaintiff certain city lots at Ontario, Oregon. About June, 1919, the defendant Hirsch began to transact business with the Ontario National Bank. In the main the usual course of business was for him to draw drafts on some party in Wisconsin, generally P. L. Goerling, which drafts he would .deposit with the bank and afterwards draw checks against them as upon a cash deposit. This method of business continued until February of the following year, the drafts increasing in size and frequency. Uniformly they were paid, except the last three, viz., one of February 11th for $7,800, on February 13th, one for $7,500, and on February 14th, one for $6,800.

At the time these drafts were drawn the bank examiner was inspecting the affairs of the bank in his official capacity and insisted to the present plaintiff, the cashier of that institution, that it was not good banking to allow drafts to be deposited as cash subject to check unless the bank had security, and he gave instructions to the cashier either to take such paper for collection only or have it accompanied by sufficient collateral. Thus urged, the plaintiff as cashier called upon Hirsch and stated to him what the bank examiner had required, requesting him to give security for the three drafts then outstanding. Accordingly, on February 17th Hirsch conveyed to

the plaintiff as trustee the real property here in question, the conveyance being delivered the same day. Hirsch had been buying realty at Ontario and improving the same with buildings, some of which were in course of construction. He owed some lienable claims of materialmen and mechanics engaged in the construction of those buildings.

When the last three drafts were drawn, Hirsch had in the bank to his credit subject to his check $7,816.01. On February 19th, two days after taking the deed, the bank was advised by its correspondent in Wisconsin that the drafts had not been paid and had gone to protest. Afterwards the bank set off the amount on deposit against the indebtedness arising out of the dishonor of the draft of February 11, 1920, leaving a balance of $14,283.99 due from Hirsch to the bank.

On June 3, 1920, less than four months after the date of the deed, Goerling filed in the District Court of the United States for the District of Oregon a petition in involuntary bankruptcy against Hirsch, who, it seems, had assumed that name, his real name being Lester Heyman, and the debtor was duly adjudged bankrupt on August 11, 1920, and W. H. Doolittle was elected as his trustee. A schedule of the bankrupt's assets and liabilities was made out and verified by Clay M. Stearns, a referee in bankruptcy, on October 29, 1920. In his affidavit of verification he gave as a reason for preparing the schedule that the bankrupt was not a resident of, or within, the state or district of Oregon and that he had failed and refused to file the schedule himself.

As the drafts were not paid, the plaintiff began this suit in foreclosure, making the trustee in bankruptcy a defendant. That official answered, challenging many particulars of the complaint, and further

answered in substance that the transaction whereby Hirsch had conveyed the property to the plaintiff worked out a preference in favor of the bank, and demanded that the deed given as a mortgage, as hereinbefore mentioned, be canceled and the realty be counted as part of the estate of the bankrupt, independent of the encumbrance. The defense of the trustee is based on Section 60b of the federal bankrupt law, found in 1 Fed. Stats. Ann. (2 ed.), page 1026 (U. S. Comp. Stats., § 9644), reading thus:

"If the bankrupt shall * * have made a transfer of any of his property, and if, at the time of the transfer * * or of the recording or registering of the transfer if by law recording or registering is required, and being within four months before the filing of the petition in bankruptcy * * the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

The new matter in the answer was traversed by the reply.

1. In order to defeat the deed, the trustee must show (1) that there was a transfer; (2) that at the date thereof the debtor was insolvent; (3) that the transfer operates as a preference in favor of the creditor to whom it is given over other creditors of the same class; and (4) that the individual receiving the transfer shall then have reasonable cause to believe that the transfer would effect a preference. A "preference" is defined by Section 60 of the bankrupt law, 1 Fed. Stats. Ann. (2 ed.), 1004 (U. S. Comp. Stats., § 9644), in substance to be such a conveyance as will enable the creditor to whom it is

given to obtain a greater percentage of his debt than other creditors of the same class.

2. The transfer is admitted. The insolvency of the debtor at the date of the transfer is in question. It is plain, as we look at the transaction in retrospect that the transfer so far as is disclosed by the testimony would enable the bank·to obtain a greater percentage of its indebtedness than other creditors of the same class. The principal contest is waged on the fourth requisite, that the grantee in the transfer at that time had reasonable cause to believe that the transfer would effect a preference in favor of the bank. In such litigation each case must depend upon its own circumstances, because the principal dispute is about the question of fact involved, to wit: whether or not the creditor had reasonable cause to believe that the debtor was insolvent and that the transfer would operate as a preference.

3. Although this is not a suit to set aside a conveyance as in fraud of creditors, and the true rule is that the creditor must fail if at the time of the transfer he had reasonable cause to believe that his debtor was insolvent and that the transfer would operate as a preference, yet we may draw an analogy as to the *quantum* of proof required to charge a creditor as upon "reasonable cause to believe," from the case of *Raymond* v. *Flavel*, 27 Or. 219, 240 (40 Pac. 158), where Mr. Justice WOLVERTON said:

"We have decided in a late case (*Bowman* v. *Metzger*, 27 Or. 23 (39 Pac. 3, 44 Pac. 1090), wherein it was sought to charge the purchaser of a promissory note before due with notice of its infirmities in the title, that the question for the determination of the jury was whether Bowman purchased in good or bad faith, and that it was error for the court to instruct the jury that notice of the facts and circumstances that a prudent man would take notice of and inquire

about, and which, if followed up, would disclose the truth, was equivalent to notice. The principle is applicable here. Circumstances which one man might look upon with suspicion, and which might cause him to make a careful inquiry, might escape the notice of another person of equal prudence and caution, so that the incidental question of common prudence is not a safe criterion by which to determine the question of notice. It might be, and often is, a circumstance tending to show bad faith, as fraud or guilty knowledge may be imputed either by direct proof or evidence of a circumstantial nature, the same as any other fact; but the real and ultimate question for determination is the *mala fides* of the transaction. * * The notice must be more than would excite the suspicion of a cautious and wary person. It must be so clear and undoubted, with respect to the existence of a prior right, as to make it fraudulent in him afterwards to take and hold the property'': Citing *Hall* v. *Livingston,* 3 Del. Ch. 348.

Likewise, in the case of *Grant* v. *First Nat. Bank,* 97 U. S. 80, 81 (24 L. Ed. 971, see, also, Rose's U. S. Notes), the rule is laid down in the syllabus:

"It is not enough that a creditor has some cause to suspect the insolvency of the debtor; but he must have such knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate, under the bankrupt act, a security taken for his debt."

4. It is true that this case was decided under the act of 1867 (14 Stats. 517), but, as stated in *In re Campion,* 256 Fed. 902, 906, the decision in the Grant case was before the Committee on Judiciary and before Congress when the act was amended, and as practically similar language is used in the present act the case must be regarded as controlling. In *Gnichtel* v. *Hightstown First Nat. Bank* (N. J.), 57 Atl. 508, the Supreme Court of New Jersey approvingly reviews the authorities that hold that mere

suspicion of insolvency is not sufficient to charge the creditor: See, also, *Stucky* v. *Masonic Sav. Bank,* 108 U. S. 74 (27 L. Ed. 640, 2 Sup. Ct. Rep. 219, see, also, Rose's U. S. Notes); *Barbour* v. *Priest,* 103 U. S. 293 (26 L. Ed. 478). In many of these cases it was well known that the debtor's paper had gone to protect in some instances.

5. Much stress is laid in argument on behalf of the trustee on the circumstance of what is denominated "kiting" Hirsch's checks, and the case of *First Nat. Bank* v. *Abbott,* 165 Fed. 853 (91 C. C. A. 538), is cited in support of that phase of the discussion. There, however, many other circumstances indicated insolvency and the "kiting" mentioned there was only one of the conditions attending the transaction. There is no law against such procedure. In banking, as well as in the drama, "all's well that ends well." Here, all the so-called "kited" drafts of the defendant were paid until the last three were dishonored, and as to that trio there is no reason imputed to the plaintiff by the testimony why the same thing would not have occurred again, why these three drafts would not be paid as the others were. There is abundant testimony that Hirsch stood well financially at Ontario and it appears that after the plaintiff required security at the instance of the bank examiner, Hirsch borrowed $15,000 from another bank in the same town. He had first tried to borrow that amount from the Ontario National Bank at the time he gave the deed, but the loan was declined. He testified in his deposition taken in Chicago that the plaintiff was informed by him of his insolvency when the deed was delivered, but that statement is denied by Homan. Moreover, it is not probable that when trying to borrow more money he would tell the bank he was utterly unable to pay.

6. Another circumstance to be taken into consideration is that the schedules made in October, as stated, were offered in evidence to support the charge that Hirsch was insolvent at the time of the conveyance here in question. But the statute under which the trustee is seeking to overturn the conveyance requires that the bankrupt must have been insolvent at the date of the transfer. It does not necessarily follow that, because the schedules made in October, and moreover, made by a stranger, not by the bankrupt himself, showed insolvency of Hirsch at that time, he was likewise in that condition in February preceding: *Tumlin* v. *Bryan,* 165 Fed. 166 (21 L. R. A. (U. S.) 960, 916 C. C. A. 200).

It is urged that the plaintiff ought to have inquired more diligently about the financial standing of Hirsch and the drawee of the drafts, and is chargeable with what he would have learned on such investigation, but the testimony does not disclose what would have transpired as a result of that inquiry. The transaction upon which the plaintiff relies must be judged as of the date when it took place and not by what occurred afterwards. Looking backward, we may now think that Hirsch was then insolvent, but the case presented is only such a retrospect. It is not shown that the plaintiff had reasonable cause to believe in the infirmities mentioned by the statute when he took the conveyance.

7. As to the matter of setting off the $7,816.01, the trustee can recover from the bankrupt's debtors only what the bankrupt himself could have recovered. A kindred principle is disclosed in *Upham* v. *Bramwell,* 105 Or. 597 (209 Pac. 100), and *Mahon* v. *Harney County Bank,* 104 Or. 323 (206 Pac. 224). Moreover, the Bankruptcy Act in Section 68, 1 Fed.

Stats. Ann. (2 ed.), 1141 (U. S. Comp. Stats., § 9652), says:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

It is true that a subsequent clause of the same section says:

"A setoff or counterclaim shall not be allowed in favor of any creditor of the bankrupt which is not provable against the estate."

8. It clearly appears here, however, that the substance of the transaction was that the bank had loaned Hirsch the amount of money represented by his drafts. Consequently Hirsch was a debtor, and the claim, although it does not appear to have been proved, was provable against his estate and hence is subject to setoff. In brief, Hirsch owed the bank the amount of the unpaid drafts and the bank owed Hirsch the amount of his deposit, making a case for the allowance of setoffs and the payment only of the balance.

9. The learned trial judge who heard the witnesses is better qualified to determine disputed questions of fact than we who read the cold, printed record, and while his determination is not conclusive, it must, in the very nature of things, be entitled to respect. We conclude that his decision was right and that it must be affirmed.            AFFIRMED.