Frank W. McDONALD, as Trustee in Bankruptcy of James W. Yockey and Elsie L. Yockey, Appellant (Plaintiff below),

v.

Deto LAWSON and Pauline Lawson, Appellees (Defendants below).

No. 2985.

Supreme Court of Wyoming.

Nov. 15, 1960.

J. Reuel Armstrong, Rawlins, for appellant.

C. L. Bates and John V. Crow, Rawlins, for appellees.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

In this case Frank W. McDonald, as trustee in bankruptcy of James W. Yockey and Elsie L. Yockey, plaintiff, on June 30, 1959, brought an action against Deto Lawson and Pauline Lawson, defendants, to recover possession of certain real estate hereinafter mentioned or $1,000, the value thereof. The complaint herein alleges that the plaintiff was duly and regularly appointed trustee in bankruptcy for James W. Yockey and Elsie L. Yockey; that Yockey and his wife were duly adjudicated bankrupts on the 27th day of February 1959, their petition in bankruptcy having

been filed on December 31, 1958; that Yockey and his wife purported to convey by warranty deed to the defendants, Deto Lawson and his wife, Lot 65, sec. 8, T. 21, R. 87 W., of the 6th p. m., the value of which is the sum of $1,000; that the consideration alleged in the deed was $10 or other valuable consideration; that the deed was recorded on December 9, 1958, in Carbon County, Wyoming; that by virtue of the Bankruptcy Acts of the United States such transfer effected a preference to the defendants while Yockey and his wife were insolvent; that such transfer was made within four months before filing of the petition in bankruptcy; that the effect of such transfer would enable the defendants to obtain a greater percentage of their debts from the bankrupts than other creditors of the same class; that the defendants knew or should have had reasonable cause to believe that the transferrors were insolvent when the conveyance above mentioned was executed and delivered; that the defendants knew or had reasonable cause to believe at the time of the transfer that a preference would be effected by accepting the foregoing deed from the Yockeys; and that no consideration except the reduction in an antecedent debt due from the bankrupts to the defendants was paid by the defendants. The plaintiff accordingly prayed that the defendants be required to convey to the trustee in bankruptcy the property above mentioned or pay the sum of $1,000, the value thereof.

Defendants answered, admitting the formal parts of the petition but denying substantially all of the averments thereof, and alleged, among other matters, that at the time of the execution of the conveyance above mentioned James W. Yockey, as general contractor, was indebted to the defendants in the sum of $1,000 for work and labor performed as his subcontractor; that defendants on the date above mentioned had no information or cause to believe that Yockey was insolvent but to the contrary were reliably informed and believed that Yockey was solvent and finan-

cially sound; and that defendants accepted the deed in good faith and for full value and by acceptance thereof lost liens for the purchase price of said lot on homes and business upon which defendants had subcontractor liens, which liens expired prior to the time plaintiff instituted this suit.

The case was tried before the court without a jury. The defendants made a motion to dismiss the plaintiff's claim for the reason that the evidence was insufficient to prove that the defendants had knowledge of the insolvency of the Yockeys or had reason to believe that at the time the transfer was made the Yockeys were insolvent. The motion was made in accordance with Rule 41(b), Wyoming Rules of Civil Procedure. The court sustained the motion and entered judgment in favor of the defendants, from which judgment the plaintiff has appealed to this court.

It appears herein that the Yockeys were in fact insolvent at the time when the conveyance herein was made but the defendants claim they did not know of any such insolvency. The Yockeys owed secured claims in the sum of $9,641.19 and unsecured claims in the sum of $73,197.74. There were thirty-four creditors. The Yockeys had accounts receivable in the sum of $8,786.73 and some personal property not of any great value. The trustee collected only a total of $3,300.

11 U.S.C.A. § 96, relating to bankruptcy, has reference to preference given by a bankrupt to any of his creditors made within four months before the filing of the petition in bankruptcy. Subsection b of that section provides in part as follows:

> "Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. * * *"

The question herein, accordingly, is whether or not the defendants had reasonable cause to believe that the Yockeys were

insolvent at the time when the conveyance heretofore mentioned was made on December 8, 1958. The evidence in that connection is rather meager. . Certain requests for admission were made by the plaintiff pursuant to Rule 36, Wyoming Rules of Civil Procedure. Among these requests are the following:

"5. Do you admit that the effect of said conveyance and transfer enabled you to obtain a greater percentage of your debt from the Yockeys than some other creditors of the same class?"

The answer was "No".

"6. Do you admit that the Yockeys, or either of them, were insolvent at the time of the transfer of the real property?"

The answer was "No".

"7. Do you admit that you, or either of you, at the time when the transfer was made, had reasonable cause to believe that the Yockeys or either of them were insolvent?"

The answer was "No".

"12. Do you admit that you were having difficulty in obtaining payments when due from the Yockeys, or either of them, on account of labor and materials furnished by you on his contracts?"

The answer was "No more than was customary in dealing with the bankrupt."

"15. Do you admit that you knew, or had reasonable cause to believe, at the time of the transfer of the property to you, that the aggregate of the Yockey property at a fair valuation was not sufficient in amount to pay their debts?"

The answer was "No".

Aside from the foregoing, the evidence relating to the point in controversy here was elicited from the defendant Deto Lawson when he was called by the plaintiff for cross-examination. The substance of his testimony was as follows: He did not know that Yockey was bankrupt until about January 3, 1959; that at that time he was working for Yockey on the "East" house; that East was the person who informed him at that time of the filing of the petition in bankruptcy; that defendant did tile and floor work which was work generally performed last when a building was constructed; that he had worked as a subcontractor for Yockey for about five years; that he did not know that Yockey was not paying his bills due to others; that it was not his business to inquire as to whether or not he paid the bills due to others so long as he paid the bills due to himself; and that Yockey never failed to pay him some amount due when asked. He attached a schedule of payments to the answers to request for admissions as heretofore mentioned which shows as follows: He was paid on June 26, 1958, $600; on August 15, 1958, $500; on September 30, 1958, $500; and on November 10, 1958, $350. Some comparatively small amounts due in September 1958 were not paid promptly. These were the following items: $19.18, $74.32, $38.50, $57.00. He had been doing work as subcontractor of Yockey on the so-called Jacobsen apartment which was not finished until December 3, 1958, five days before the conveyance here in question was executed. The property conveyed was worth $1,000. He credited that amount on the oldest debts due him, namely, those in September and also the sum of $801 on the indebtedness due in connection with the Jacobsen apartment, leaving still due him on December 8, 1958, the sum of $895 for the work on the Jacobsen apartment.

We have no reason to question the rule laid down in Hawkey v. Williams, 72 Wyo. 20, 261 P.2d 48, and other cases holding that on appeal from a judgment of dismissal of a complaint at the close of the plaintiff's case the evidence must be considered and reviewed in the light most favorable to the plaintiff, but that does not change the rule that the burden of proof is on the plaintiff to show that at the time when the conveyance herein was made the defendants had reasonable cause to believe that the debtors were insolvent and whether

or not such reasonable cause existed is ordinarily a question of fact. Rudisill's Trustee v. Wildasin, 275 Pa. 255, 119 A. 137; Security-First Nat. Bank of Los Angeles v. Quittner, 9 Cir., 176 F.2d 997; 3 Collier, Bankruptcy, 14th ed., § 60.54. See also 8 C.J.S. Bankruptcy § 372. The cases dealing with the subject before us are almost innumerable and the facts vary so much that it wouldn't subserve any good purpose to review them. Each case must stand on its own footing. We may, however, mention a few cases which lay down the general principles applicable herein. All the cases agree that it is not enough that a creditor have some cause to suspect insolvency but he must have knowledge of facts to induce him to believe that his debtor is insolvent. A case often cited is Grant v. National Bank, 97 U.S. 80, 81, 24 L.Ed. 971, where the Supreme Court of the United States stated:

"* * * It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it,—and yet such belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances is not prohibited by the law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their solvency were sufficient for the purpose."

In Gray v. Little, 97 Cal.App. 442, 275 P. 870, 871, 872, the court succinctly stated some of the principles applicable as follows:

"The fact alone that a creditor knows his debtor to be financially embarrassed and is pressing for a payment of his claim is not sufficient to charge him with having reasonable cause to believe his debtor to be insolvent. Sharpe v. Allender (C.C.A.) 170 F. 589; Page v. Moore, (D.C.), 179 F. 988. Mere suspicion that the debtor may be insolvent is not sufficient to render payments received by a creditor voidable as preference, but he must have such knowledge of facts as to induce a reasonable belief of insolvency. Bassett v. Evans (C.C.A.) 253 F. 532; City National Bank of Columbus v. Slocum (C.C.A.) 272 F. 11; Homan v. Hirsch, 106 Or. 98, 211 P. 795. It is not enough that a creditor has cause to suspect the insolvency of the debtor, but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. Grant v. National Bank, 97 U.S. 80, 81, 24 L.Ed. 971; In re Campion et al. (D.C.) 256 F. 902. In the case last cited the court said that the burden is on the trustee in bankruptcy to show that the creditor to whom the transfer was made shortly before bankruptcy had reason to believe that a preference would result. The trustee has failed to sustain this burden in this case. * * *"

See further In re Solof, 9 Cir., 2 F.2d 130; In re Salmon, 2 Cir., 249 F. 300; Cate v. Certainteed Products Corporation, 23 Cal. 2d 444, 144 P.2d 335.

 Let us examine some of the facts relied upon by counsel for appellant to show

that the defendants had reasonable cause to believe that the Yockeys were insolvent. He calls attention to the great discrepancy between the assets and the liabilities of the bankrupts but there is no evidence that the Lawsons knew who were the creditors of the Yockeys or even if they had known that they could have found out the facts. Counsel also calls attention to the fact that Deto Lawson was Yockey's subcontractor for some five years. Counsel for appellant seems to think that by reason of that fact he should have known the financial embarrassment of the Yockeys, but the exact contrary may be inferred. For five years the Lawsons had no trouble in getting paid by Yockey. Why should they have any suspicion in December 1958 that Yockey, who evidently did a great deal of business, had become bankrupt? Mention is also made of the fact that Deto Lawson, to some extent at least, relied for payment on his rights to procure a lien, but that of course was a mere matter of precaution doubtless taken by substantially all contractors and subcontractors. Again counsel says that Lawson testified that it was not his business to inquire whether or not Yockey paid the bills due to other parties so long as he paid his own bills. Counsel has not pointed out why that is not ordinarily a good policy.

There is no testimony to indicate that Lawson knew anything about other creditors of Yockey or that circumstances existed which should have called his attention thereto. In view of the payments made to Lawson in the summer of 1958 the fact that the little items of indebtedness accruing in September 1958 were not paid promptly seems to be of little importance. When a large amount of indebtedness had accrued in December by reason of work on the Jacobsen apartment, Lawson then evidently asked for payment and in response received the conveyance in question here. The only circumstance in this case so far as we can see to support appellant's view is the fact that Lawson instead of payment in cash received payment by a conveyance, but that alone is not of controlling importance. In re Gaylord, D.C.N.Y., 225 F. 234; Cate v. Certainteed Products Corporation, supra. This is particularly true in view of the fact that the details of the transaction in December are not shown in the record and in view of the cash payments received by Lawson in the summer of 1958 shortly before the transaction in December.

In short, we cannot say the trial court erred in the conclusion at which it arrived and its judgment is, accordingly, affirmed.

Affirmed.