Argued May 8, decided June 10, 1913.

## UNITED STATES NAT. BANK v. THEBAUD.

### (132 Pac. 1168.)

**Fraudulent Conveyances—Time of Conveyance.**

1. Under Section 7397, L. O. L., providing that every conveyance with intent to hinder or defraud creditors shall be void as against the person so defrauded, it is immaterial whether the debt is contracted at the time of the conveyance, if the parties executed it at that time for the purpose of defrauding creditors.

[As to intent of grantor as test of whether conveyance fraudulent, see note in 14 Am. St. Rep. 747.]

**Fraudulent Conveyances—Conveyance Between Relatives—Burden of Proof.**

2.  If a deed between near relatives is assailed as being executed to defraud creditors, the burden is on the grantee to prove that the transfer was without notice of the fraud and for a valuable consideration.

>   [As to grantee's knowledge of fraud and the burden of proof in that connection, see note in 20 Am. St. Rep. 633.]

**Fraudulent Conveyances—Actions—Proof.**

3.  In case of a conveyance between near relatives so as to raise a presumption of fraud as to creditors, the grantee must prove, as well as allege, that he is an innocent purchaser for value.

**Fraudulent Conveyances—Sufficiency of Evidence.**

4.  Evidence in a creditor's suit to recover property fraudulently conveyed *held* to show that, when the deed was made to the grantor's wife, grantor contemplated extensive dealings with a bank, and refused to pay his notes to it, and made the deed to protect himself against liability therefor.

From Malheur: Dalton Biggs, Judge.

Statement by Mr. Justice Eakin.

On June 25, 1908, the defendant C. W. Thebaud made, executed and delivered to the First Bank of Vale, afterward reorganized as the United States National Bank of Vale, the plaintiff herein, his promissory note in the sum of $1,250, subsequently assigned to the plaintiff. The said defendant C. W. Thebaud, being a stockholder in the First Bank of Vale, and afterward a stockholder and director in the plaintiff bank, on June 1, 1910, gave to plaintiff his promissory note in the sum of $2,000 for a loan made at that time, and on the 29th day of June, 1910, he gave to the plaintiff his promissory note in the sum of $1,000 for a loan from the plaintiff bank, he being then president thereof. Thereafter the plaintiff brought an action upon said three promissory notes against C. W. Thebaud, and recovered judgment for the amount thereof, with interest, attorneys' fees, and costs; and execution was issued upon said judgment and returned *nulla bona*. Plaintiff brought this suit in the nature of a

creditor's suit to uncover property conveyed by C. W. Thebaud to his wife, alleging that on the 30th day of January, 1908, C. W. Thebaud, being the owner of 360 acres of land described in the complaint, conveyed the same to the defendant Blanche Flower Thebaud, his wife, without consideration and in trust for himself for the purpose of hindering, delaying and defrauding his creditors.   The complaint contains this allegation, being paragraph 12 of the complaint: "That said defendant, Blanche Flower Thebaud, at the time and prior to the execution and delivery of the deed conveying the said above-described real property to her by the said C. W. Thebaud, had full and actual knowledge of the intent of the said grantor therein to defraud, hinder and delay his then and subsequent creditors, and then and there and prior thereto conspired with the defendant C. W. Thebaud to defraud the then subsequent creditors of the said C. W. Thebaud, and that the said defendant Blanche Flower Thebaud at the time said deed was executed and delivered to her well knew that the said C. W. Thebaud had no other property, either real or personal, with which to satisfy the debts of the said defendant C. W. Thebaud, and that thereby said defendant Blanche Flower Thebaud became trustee of the interest of the said defendant C. W. Thebaud in and to the said above-described premises, and then and now holds bare legal title to same as trustee for the said C. W. Thebaud." The suit was tried, findings were made, and decree was rendered in favor of plaintiff, from which defendants appeal.                                    AFFIRMED.

For appellants there was a brief over the names of *Mr. John L. Rand, Mr. A. A. Smith* and *Mr. William H. Packwood, Jr.,* with an oral argument by *Mr. Packwood, Jr.*

For respondent there was a brief over the names of *Messrs. McCulloch, Soliss & Duncan,* with an oral argument by *Mr. John W. McCulloch.*

Mr. Justice Eakin delivered the opinion of the court.

The defendants join in the answer. All of the allegations of the complaint are admitted, except that it is denied that the $2,000 note and the $1,000 note were given for money loaned, alleging that they were given to cover overdrafts; and paragraph 11, which is that the conveyance to his wife by C. W. Thebaud was without consideration and with intent to delay and defraud creditors, is denied except that the conveyance is admitted and it is alleged that it was for a consideration of $18,900.

1. The principal contention of the defendant is that the notes upon which the judgment was obtained were contracted subsequent to the execution of the deed from C. W. Thebaud to his wife. Section 7397, L. O. L., provides: "Every conveyance or assignment in writing * * of any estate * * made with the intent to hinder, delay, or defraud creditors * * as against the persons so hindered, delayed, or defrauded, shall be void." Under this provision it has been held by this court that it is immaterial whether the debt due such creditors had been contracted at the time of the conveyance, if the parties at that time executed it for the purpose of defrauding them: *Marks* v. *Crow,* 14 Or. 382 (13 Pac. 55); *Morton* v. *Denham,* 39 Or. 227 (64 Pac. 384).

2. And where the deed is attacked for fraud, and it is between near relatives, the burden is cast upon the grantee to prove that the purchase was made without notice of the fraud and was for a valuable consideration: *Weber* v. *Rothchild,* 15 Or. 385 (15 Pac. 650, 3

Am. St. Rep. 162); *Stubling* v. *Wilson,* 50 Or. 282 (90 Pac. 1011, 92 Pac. 810).

3. Not only must it be alleged, but proved, that he is an innocent purchaser for a valuable consideration: *Walker* v. *Harold,* 44 Or. 205 (74 Pac. 705). It is an affirmative defense, and must be alleged and proved: *Weber* v. *Rothchild,* 15 Or. 385 (15 Pac. 650, 3 Am. St. Rep. 162).

4. Viewing the evidence in the light of this statement of the law, the conclusion is unavoidable that the conveyance was fraudulent and affects Blanche Flower Thebaud. L. J. Hadley, who was for some time a director and vice-president of the bank, testifying as to a talk had with C. W. Thebaud, says:

"We was talking about the notes of the bank down there, that he owed the bank and some Brogan notes, and he told me—we was talking about these Hope notes once, and he told me that he owed those notes, that is, some notes here at the bank Hope is connected with; he told me that he owed those notes, and he said they had been so mean about handling (dealing) with him that he says, 'I have got about $90,000 worth of property, and I took and transferred it all to my wife, and,' he says, 'the sons-of-bitches can go now, and I will pay the note when I get ready.' That was practically the conversation at that time."

On cross-examination by defendants' counsel:

"Q. And you say that at that time Mr. Thebaud said he had about $90,000 worth of property, and he had put it out of his hands in order to beat the United States National Bank?

"A. That, in particular.

"Q. And you were then talking about this $5,000 judgment, were you?

"A. We were talking about that—discussing that at that time, generally; yes."

From October, 1907, to January, 1910, C. W. The-baud made many deposits in plaintiff bank, checking against his account every few days. Much of that time his account was overdrawn in large amounts, and, as he admits in his answer, two of these notes were given to cover such overdrafts. Many of these deposits were from the proceeds of the farm, and many of the checks were to pay the expense thereof. He handled the farm and its proceeds at all times as if they were his own, holding himself out as the owner, and all his credit was obtained on the inference that he still owned the farm. The wife paid nothing for it, and had knowl-edge of his purposes, so that according to his state-ments to Hadley the wife held the title in trust for him. He was a witness at the trial, but did not deny the statements attributed to him by Hadley, and testi-fied to nothing but the identity of some exhibits. Blanche Flower Thebaud did not testify.

From this state of the evidence, taken in connection with the twelfth paragraph of the complaint quoted above, which is not denied, defendants are without any defense to this suit. The necessary inference is that at the time the deed was made to the wife C. W. The-baud had in mind a prospective extensive dealing with the bank, and had a purpose to do just what he after-ward did, namely, refuse to pay his notes thinking that the deed would protect him. "The question of fraud-ulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law": Section 7400, L. O. L. A stronger case upon the facts could hardly be made of an effort to avoid the payment of an honest, admitted debt by one well able to pay.

The decree is affirmed.                          AFFIRMED.