Argued October 15, affirmed November 24, 1925, rehearing denied
January 26, 1926.

# H. W. SITTON, TRUSTEE, v. JOHN PEYREE, IDA PEYREE AS ADMINISTRATRIX, AND IDA PEYREE.

### (241 Pac. 62; 242 Pac. 1112.)

Witnesses—Seal of Secrecy Placed on Any Communication Made by Client to His Attorney in Course of Professional Employment—Term "Client" Used in Enlarged Sense and Statute Closes Mouths of All Listening to Disclosures Looking to Professional Aid.

1. Under Section 733, Or. L., the seal of secrecy is placed on any communication made by a client to his attorney in the course of professional employment, and the term "client" as used in statute should be understood in its enlarged sense, and prohibition should close the mouths of all who have listened to disclosures looking to professional aid.

Witnesses—Character of Communication as Privileged Does not Depend on Payment of Retaining Fee to Attorney.

2. Character of a communication made between attorney and client as privileged does not rest on payment of retaining fee to the attorney.

Witnesses—Competency of Witness to Testify as to Alleged Privileged Matter Question of Law for Determination of Court from Preliminary Examination.

3. Question of competency of witness to testify to alleged privileged matter is a question of law to be determined by the court from preliminary examination of witness.

Witnesses—If Attorney Employed is Mere Scrivener to Draft Deeds, He was Competent Witness in Suit to Set Aside Deeds.

4. If attorney was employed merely as scrivener to draft deeds, he would be a competent witness in a suit to set aside such deeds as preferences, or in fraud of creditors.

Witnesses—Attorney Incompetent to Testify as to Matter Acquired from Communication Made in Course of Employment, or in Conference Where Relationship Formed.

5. In suit by trustee in bankruptcy to set aside certain deeds by son to father as being preferences, under federal Bankruptcy

---

1. Privileged communications between attorney and client, see notes in Ann. Cas. 1913A, 3; Ann. Cas. 1916E, 335.

2. Privilege of communication to attorney as affected by fact that no fee is paid, see note in 34 L. R. A. (N. S.) 577.

4. See 28 R. C. L. 557.

Act, Section 60, subdivisions (a) and (b) (U. S. Comp. Stats., sec. 9644), and as in fraud of creditors, under Section 67, subdivision e thereof (Section 9651), attorney who drew deeds in question *was incompetent to testify as to matters disclosed to him* by virtue of and in course of his employment as attorney, or during conference held for purpose of forming such relationship.

**Witnesses—What Grantee Said to Attorney With Reference to Intention and Purpose of Executing Deeds Held Privileged as Relating to Business and Interest of Client.**

6. In action to set aside conveyances by son to father, where attorney who drew up conveyance was asked to testify as to what father said concerning intent and purpose of executing the deed described in the complaint when he called at attorney's office, *held,* under the evidence, that such question was privileged as being a communication made by client to his attorney relating to business in interest of client.

**Witnesses—Under Statute, if Party Takes Witness-stand in Own Behalf, He Removes Seal of Secrecy as to Communications Made to Attorney.**

7. Under Section 734, Or. L., if party takes witness-stand on his own behalf, he removes seal of secrecy as to communication made to his attorney.

**Bankruptcy—Federal Court's Adjudication That Partnership and Individual Members Were Bankrupt Prior to Execution of Deeds Conclusive in Later Suit to Set Aside Partners' Conveyances.**

8. Where federal court adjudicated partnership and individual members constituting same to be bankrupt, prior to execution of deeds in question, such adjudication was conclusive as to insolvency of members at time of their execution in a later suit to set aside such deeds as preferences and in fraud of creditors.

**Fraudulent Conveyances—Immaterial Whether Debt was Contracted at Time of Conveyance, if Parties Executing Conveyance Executed Conveyance for Purpose of Defrauding Creditors.**

9. Under Section 10170, Or. L., conveyance of land, made with intention to hinder, delay, or defraud creditors of their lawful demands, is void against the person so injured, delayed or defrauded, and it is immaterial whether the debt was contracted at the time of the conveyance, if the parties executed the conveyance for such purpose.

---

7. Client's introduction of evidence as waiver of privilege of communication between attorney and client, see note in 20 Ann. Cas. 1285.

Testimony of client to transaction as waiver of privilege of communication between attorney and client, see notes in Ann. Cas. 1913A, 32; Ann. Cas. 1916D, 1087.

Fraudulent Conveyances—Conveyance to Relative Scrutinized Closely When Assailed by Creditors of Grantor, but Sustained if Made in Good Faith.

10.   The conveyance of land to relative is always closely scrutinized when good faith of a transaction is assailed by the creditors of the grantor, but if such conveyances are made in good faith, and violate no rule of law, they will be sustained.

Fraudulent Conveyances—Affirmative Defense of Good Faith must be Proved by Defendant Pleading Same.

11.   In action to set aside conveyances as in fraud of creditors, a defendant who makes an affirmative defense of good faith has the burden of proving same.

Fraudulent Conveyances—Plaintiff must Prove Allegations of Complaint in Action to Set Aside Conveyance as Fraudulent.

12.   In action to set aside conveyance as in fraud of creditors, burden is on plaintiff to prove the allegations of his complaint.

Evidence—Declaration by Defendant Grantor as to Reason for Conveyance not Evidence Against Defendant Grantee to Whom Conveyance was Made.

13.   In action to set aside deeds by son to father as in fraud of creditors, declaration made by son to attorney that he made conveyance because he thought some of his creditors were trying to take advantage of him was admissible against son, but not against codefendant father, in whose presence such declaration was not made.

Fraudulent Conveyances — Evidence Insufficient to Show Grantee Knew, or had Reasonable Cause to Believe, Transfer Would Effect a Preference, or That Grantor was Insolvent.

14.   In action to set aside conveyance by son to father, as a preference and in fraud of creditors, where conveyance was alleged to be in payment of sums advanced by father, *held*, that evidence was insufficient to show that father grantee knew his son was insolvent, or had reason to suspect same, or that transfer would effect a preference, and good faith of father in taking such conveyance was shown by the evidence.

### ON PETITION FOR REHEARING.

Bankruptcy—Plaintiff must Prove Allegations of Complaint in Action to Set Aside Conveyance as Fraudulent.

15.   In action to set aside conveyance as in fraud of creditors, within Bankruptcy Act, Section 67e (U. S. Comp. Stats., § 9651), burden is on plaintiff to prove allegations of his complaint.

---

10.   Transaction between relatives as fraud on creditors, see note in 32 L. R. A. 67.

Effect of relationship to show participation by creditors in debtor's fraudulent intent, see note in 31 L. R. A. 645.

12.   See 12 R. C. L. 666.

13.   Admissibility of declarations of vendor against vendee to show fraud, see note in 42 Am. Dec. 631. See, also, 12 R. C. L. 676.

Witnesses—Plaintiff, by Calling Defendants to Witness-stand, Represented Them to Court as Worthy of Credit.

16. Where plaintiff, to establish conveyance as in fraud of creditors, placed each of defendants on witness-stand, he thereby represented them to court as worthy of credit.

Bankruptcy — Deeds `or Mortgages Executed Within Four Months Prior to Filing of Petition in Bankruptcy not Prima Facie Fraudulent.

17. Under Bankruptcy Act, Section 67e (U. S. Comp. Stats., § 9651), deeds or mortgages executed within four months prior to filing of petition in bankruptcy are not *prima facie* fraudulent.

Bankruptcy, 7 C. J., p. 88, n. 5, p. 174, n. 51, p. 175, n. 57, p. 176, n. 60, 63, p. 269, n. 70, p. 270, n. 89, p. 273, n. 26.

Evidence, 22 C. J., p. 348, n. 28, p. 349, n. 34.

Fraudulent Conveyances, 27 C. J., p. 414, n. 17, p. 495, n. 58, p. 506, n. 95, p. 521, n. 7, p. 642, n. 51, p. 786, n. 87, p. 835, n. 63.

Witnesses, 40 Cyc., p. 2361, n. 81, p. 2362, n. 82, p. 2365, n. 5, p. 2366, n. 12, 15, p. 2396, n. 55, p. 2401, n. 88, p. 2561, n. 73.

From Marion: GEORGE G. BINGHAM, Judge.

Department 2.

This suit was prosecuted by plaintiff, as trustee in bankruptcy, against J. B. Peyree and Ida Peyree, husband and wife, and their son, John Peyree, for the purpose of canceling two deeds to real property made by the son to his father on November 3, 1920, which property consisted of an undivided one-half interest in 98.6 acres of farm land in Polk County and an undivided one-half interest in a house and lot in Salem, Marion County. Plaintiff asserts that the conveyances created voidable preferences under subdivisions (a) and (b), Section 60, of the federal Bankruptcy Act (U. S. Comp. Stats., § 9644), and that they were executed by John Peyree with the intent and purpose on his part to hinder, delay and defraud his creditors in the collection of their claims against him, in violation of subdivision (e), Section 67, of that act (sec. 9651).

On February 2, 1921, an involuntary petition in bankruptcy was filed in the United States District

Court of Oregon, against Peyree Company, a partnership consisiting of John Peyree and George B. Jacobs, and against each of the partners individually. Among other things, the petition alleged that, on October 29, 1920, the partners were insolvent and were without funds to meet their debts, and that, on that date, for the purpose of preferring the First Bank of Bay City, to which bank they were indebted in the amount of $5,000, they transferred all the partnership property to the bank by executing a mortgage lien thereon to secure the payment of such sum. The alleged bankrupts, through their attorney, confessed the petition and were adjudged bankrupts as partners and individually. The plaintiff is the duly appointed, qualified and acting trustee of the estate and effects of the bankrupts.

The fourth paragraph of plaintiff's complaint avers that John Peyree, for the purpose of hindering, delaying and defrauding his creditors in the collection of their lawful demands, conveyed his real property to his father, J. B. Peyree, and without any consideration moving from the father to the son; that the grantee accepted such conveyance knowing that the grantor designed and intended thereby to hinder, delay and defraud his creditors in the collection of their just debts, and that at that time the grantee had reasonable cause to believe, and did believe, that his son John was then insolvent; further, that J. B. Peyree, at the time the conveyances were executed and delivered to him, had reasonable cause to believe that the enforcement of such transfers of real property would effect a preference in his favor and would enable him to realize a greater percentage on his debt than any of the other creditors of the same class would be enabled to realize.

For answer, the defendants admit the filing of a petition in bankruptcy and the adjudication of the material facts therein averred, the election and appointment of the plaintiff as trustee as averred in the complaint, and the execution of the deeds in question, but deny each and every allegation contained in the complaint not admitted. For further and separate answer the defendants allege, among other things, that John Peyree was indebted to J. B. Peyree in the sum of $7,750, and that, on November 3, 1920, in consideration and satisfaction of that indebtedness, John Peyree made and delivered to J. B. Peyree two deeds conveying to him an undivided one-half interest in the property described in the complaint. They then allege that the conveyance was made in good faith between the father and the son.

The plaintiff replied to the new matter contained in the answer. On the trial, the court made the following findings of fact and conclusions of law: That on November 3, 1920, John Peyree was indebted to his father, J. B. Peyree, in a sum in excess of $7,000, for moneys advanced to him by J. B. Peyree from time to time and used by him in his sawmill business in Tillamook County, Oregon; that prior thereto defendant John Peyree was the owner of a half interest in and to the real property described in plaintiff's complaint, and that, on that date, to secure J. B. Peyree in the payment of the moneys advanced to him, John Peyree made, executed and delivered to J. B. Peyree deeds conveying his undivided one-half interest in and to that property, which deeds constitute mortgages against the property; that on November 3, 1920, the date the transfers were made and accepted, J. B. Peyree had no reason to know, and did not know, that John Peyree was insolvent or intended to

create a preference, nor did he have sufficient knowledge or information to put him on inquiry as to the financial condition of John Peyree, and that J. B. Peyree, in accepting the deeds as security, acted in good faith.

As a conclusion of law, the court found that the deeds executed by John Peyree to J. B. Peyree constituted mortgages to secure to the mortgagee the indebtedness then existing and owing to him by the mortgagor.

Based upon its findings and conclusions, the court decreed that the plaintiff's complaint be dismissed.

The plaintiff, appealing, asserts that the court erred in excluding testimony on the ground of "privilege," and in making certain findings of fact.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. John Bayne.*

For respondents there was a brief and oral arguments by *Mr. W. C. Winslow.*

BROWN, J.—Since this case was appealed, and during the month of January, 1925, J. B. Peyree died in Marion County, Oregon; and, upon her application therefor, Ida Peyree, administratrix, was, by an order of this court, made a party respondent herein in lieu of J. B. Peyree, deceased.

The deeds involved in this suit were drawn by A. O. Condit, attorney at law, now deceased, who was offered as a witness by plaintiff to prove declarations made by defendants J. B. Peyree and John Peyree. The first assignment of error relates to the court's refusal to permit Mr. Condit to testify for plaintiff as to what the defendant J. B. Peyree "said con-

117 Or.—8

cerning the intent and purpose of executing the deeds described in the complaint" when he called at Condit's office just prior to November 3, 1920, and advised him that John Peyree would be in to have him prepare the deeds. Objection was interposed on the ground that the communication was privileged.

1. For centuries, the common-law doctrine has maintained the rule that communications between an attorney and his client during and by reason of their relations as such, made in confidence and to enable the attorney to perform his professional duty in regard to the subject matter of the communication, are deemed privileged. The common law recognized such communications as privileged, and our Code, at Section 733, has enacted:

"There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: * *

"(2) An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of professional employment. * * "

Note the language. The seal of secrecy is placed upon "any communication" made by a "client" to his attorney "in the course of professional employment."

See *State* v. *Gleason,* 19 Or. 159 (23 Pac. 817); *Minard* v. *Stillman,* 31 Or. 164 (49 Pac. 976, 65 Am. St. Rep. 815); *Young's Estate,* 59 Or. 348 (116 Pac. 95, 116 Pac. 1060, Ann. Cas. 1913B, 1310); *McNamee* v. *First Nat. Bank of Roseburg,* 88 Or. 636 (172 Pac. 801); *Bryant* v. *Dukehart,* 106 Or. 359 (210 Pac. 454); 10 Encyclopedia of Evidence, 205; Weeks on Attorneys at Law, §§ 141–182 incl.; 4 Jones' Commentaries on Evidence, § 748; 5 Wigmore on Evidence, §§ 2290, 2291, 2292, 2297; 1 Thornton on Attorneys at

Law, Chap. 6; notes, Ann. Cas. 1913A, 3–14; 66 Am.
St. Rep., 213–226.

"The term 'client,' as used in a statute, should be
understood in its most enlarged sense, and the pro-
hibition should close the mouths of all who have
listened to disclosures looking to professional aid."
Weeks on Attorneys at Law, § 143.

2. It is suggested that the attorney had not been
paid at the time of the communication. While some
kind of employment establishing the professional re-
lation must exist, a formal retainer is unnecessary.
Moreover, the seal of secrecy does not rest upon the
payment of a retaining fee: 1 Thornton on Attorneys
at Law, § 109; Weeks on Attorneys at Law, § 154.

3–5. The question of the competency of the witness
to testify to the matter alleged to be privileged was
a question of law to be determined by the court from
a preliminary examination of the witness. If the at-
torney was employed as a mere scrivener to draft the
deeds in question, he was a competent witness: 4
Jones' Commentaries on Evidence, § 751a, p. 504. On
the other hand, if the attorney acquired his knowl-
edge of privileged matter from a communication
made to him by a client by virtue of and in the course
of the attorney's employment as such, he was not a
competent witness. It is essential, however, that the
communication, to be privileged, be conveyed to the
witness while the relation of attorney and client ex-
ists, or during a conference held for the purpose of
forming such relation: 10 Ency. of Evidence, p. 230.

From time to time, the seal of secrecy may defeat
justice. But eminent courts have declared:

"Truth, like all other good things, may be loved un-
wisely, may be pursued too keenly, may cost too
much; and surely the meanness and the mischief of
prying into a man's confidential consultations with

his legal adviser, the general evil of infusing reserve and dissimulation, uneasiness, suspicion and fear into those communications which must take place, and which, unless in a condition of perfect security, must take place uselessly or worse, are too great a price to pay for truth itself." *Pearse* v. *Pearse*, 1 De Gex & S. 25.

6. So far as disclosed by the record, the declaration sought to be adduced as evidence in the instant case was within the rule that the subject matter of the communication made by the client to his attorney must relate to the business and interest of the client. J. B. Peyree had, directly or indirectly, loaned to his son John Peyree about $7,000, taking notes as security therefor. The trial court found this to be the sum due the father, which fact was established by abundant evidence, including that of the assistant cashier of Ladd & Bush Bank, where John had received the money. From time to time the son, when obtaining loans of money, promised his father that he would secure him for all advances by a conveyance of the real property involved herein. John Peyree resided in Tillamook County, while the father's home was in the Waldo Hills in the county of Marion. Whether the son ever visited his father at any time other than when he wanted money, we are not informed. However, the son came from Tillamook County just prior to the making of the deeds on November 3, 1920, and remained at his father's home overnight. Immediately thereafter, the father visited the law office of his former attorney and told the attorney, in substance, that John would come to his office soon to have some deeds drawn conveying real property to him, the father. In keeping with the engagement of the father, the son soon thereafter appeared at the office of the attorney. The deeds were

drawn by the attorney and executed by the son. The attorney witnessed the son's signature, took his acknowledgment thereto, and thereafter caused the deeds to be recorded. The recordation of these deeds inured to the benefit of J. B. Peyree, the father.

The question propounded to the witness, that called forth the objection, reads:

"What did he (J. B. Peyree) say, if anything, with reference to the reason for wanting you to draw the deeds?"

7. Whether the answer expected from the witness was competent as evidence we are unable to say. Counsel made no statement to the court as to what he expected to prove by the witness. But we gather from his brief that J. B. Peyree made communications to the attorney tending to show that he was a preferred creditor. This is a case in equity, but the testimony was not taken under the rule governing procedure in an equity suit. The attorney never testified in any proceeding as to what declarations were made to him by J. B. Peyree. He did testify, however, concerning representations made to him by John Peyree, but such testimony was given only after John had removed the seal of secrecy by taking the witness-stand in his own behalf. Section 734, Or. L., provides:

"If a party to the action, suit, or proceeding offer himself as a witness, that is to be deemed a consent to the examination also of a wife, husband, attorney, clergyman, physician, or suregon, on the same subject, within the meaning of subdivisions 1, 2, 3, and 4 of the last section."

See local citations in annotations to section quoted.

The defendant J. B. Peyree was called as a witness by the plaintiff, but was not placed on the witness-

stand by the defense. John Peyree was called by
the defendant and testified to a number of things, in-
cluding his visit to, and business transacted at, the
attorney's office. Thereafter, the attorney was called
and permitted to testify, in the matter of the state-
ments made to him by John Peyree that—

"After the deeds were drawn and signed and the
transaction was practically completed, he told me
that he had made the deeds to his father to secure
him for about $4,000 which his father had advanced
to him. He said he did it because he thought some
of his creditors were trying to take an undue ad-
vantage of him, and he was going to show them a
trick or two."

8. The defendants assert that John Peyree was not
an insolvent on the date he executed the deeds in-
volved herein. A judgment rendered in the federal
court is conclusive as to all matters actually deter-
mined by the court: Or. L., § 756. See, also, *United
States Nat. Bank* v. *Shehan,* 98 Or. 155, 161 (193 Pac.
658); *Haney* v. *Neace-Stark Co.,* 109 Or. 93 (216 Pac.
757, 219 Pac. 190); 7 C. J. 88. We have seen that the
court decided that the partnership and the individuals
constituting such partnership were bankrupt at a time
prior to the execution of the deeds in question. The
act of bankruptcy charged in the petition is of date
October 27, 1920: *Lazarus* v. *Eagan,* 206 Fed. 518,
30 Am. Bankr. Rep. 287, and authorities therein
noted.

9, 10. It is earnestly contended that the deeds as-
sailed in this suit are null and void as against cred-
itors. Every conveyance of lands made with intent
to hinder, delay or defraud creditors of their lawful
demands is void as against the person so hindered,
delayed, or defrauded: Or. L., § 10170. Further, it
is not material whether the debt was contracted at

the time of the conveyance, if the parties executed the conveyance for the purpose of defrauding creditors: *United States Nat. Bank* v. *Thebaud,* 65 Or. 317, 320 (132 Pac. 1168). Again, a conveyance of land to relatives is always closely scrutinized when the good faith of the transaction is assailed by the creditors of the grantor: *Garnier* v. *Wheeler,* 40 Or. 198, 201 (66 Pac. 812). But if such conveyances are made in good faith, and are genuine, and violate no rule of law, they will be sustained: *Jolly* v. *Kyle,* 27 Or. 95 (39 Pac. 999), and cases cited.

11, 12. In the case at bar, an affirmative defense of the good faith of the transaction is pleaded as new matter in the answer, and it becomes necessary for the defendants to prove the allegations of good faith. It is likewise necessary for the plaintiff to establish the material allegations of his complaint. A case in point is that of *Homan* v. *Hirsch,* 106 Or. 98 (211 Pac. 795), wherein a mortgage deed was assailed upon the ground that it preferred the grantee as a creditor over other creditors of the grantor, who was alleged to have been an insolvent at the time of the transaction. In discussing that case, Mr. Chief Justice BURNETT, speaking for this court, said:

"In order to defeat the deed, the trustee must show (1) that there was a transfer; (2) that at the date thereof the debtor was insolvent; (3) that the transfer operates as a preference in favor of the creditor to whom it is given over other creditors of the same class; and (4) that the individual receiving the transfer shall then have reasonable cause to believe that the transfer would effect a preference."

13, 14. There is in the cause at issue proof of the transfer and the insolvency of the debtor. The evidence also shows that because of the transfer the grantee would have been enabled to obtain a greater

percentage of the amount of money due him than the other creditors of the same class will receive. However, the trial court found as a fact that J. B. Peyree neither knew nor had reasonable cause to believe that the transfer would effect a preference over other creditors of the same class, or that John was an insolvent. Moreover, we believe that the trial court rightly found the facts. The declaration hereinbefore noted of John Peyree, the son, to the attorney, was not made in the presence of the father. It is evidence against the declarant, but it is not competent as against his absent codefendant, to whom the conveyance was made. We have searched the record for all testimony in support of the averments of the complaint. We have weighed and considered the effect of all the evidence disclosed by the record. There is an insufficiency of proof of the fourth requisite, as held in *Homan* v. *Hirsch, supra,* and cases therein cited, to set aside the deeds. We are not authorized by the law to suppose, imagine, conjecture or guess the old man's rights away. The evidence does show that the father advanced money and credit to his son. It shows that the son failed in business. It shows that the transaction in question was based upon a valuable consideration, but that it took place within four months of the filing of petition in bankruptcy. It shows that the grantor slept under his father's roof the night preceding that parent's visit to the attorney's office to arrange for the drawing of the deeds. But neither one nor all of these circumstances constitute proof that J. B. Peyree was engaged in defrauding the other creditors. Suspicion is not proof. There is testimony to the effect that the grantee not only did not know that his son was an insolvent, but that he had no notice thereof that would have caused him to suspect such insolvency.

In attempting to establish his cause, the plaintiff called J. B. Peyree to the witness-stand. The story told by him upon direct and cross-examination reads like the testimony of an honest man, who possessed full confidence in his son's ability and integrity; and in this conclusion we are corroborated by the testimony of the assistant cashier of the bank. Finally, the testimony of J. B. Peyree, weighed in connection with other evidence, establishes his good faith in taking deeds to the property.

After a full and careful consideration of the whole record and the law applicable to the questions involved, we are compelled to affirm the holding of the lower court.                                    AFFIRMED.

McBRIDE, C. J., and BEAN and BELT, JJ., concur.

---

Rehearing denied January 26, 1926.

ON PETITION FOR REHEARING.

(242 Pac. 1112.)

For the petition, *Mr. John Bayne.*

*Contra,* no appearance.

BROWN, J.—For the facts in this case and the issues made by the pleadings, see our original opinion rendered on November 24, 1925, and reported *ante,* p. 107 (241 Pac. 62). In that decision, we discussed the case on the theory upon which it had been tried in the court below and upon the assignments of error. After hearing the evidence, the trial court found:

"The said deeds were given by the said John Peyree to the said J. B. Peyree as security, to secure the said J. B. Peyree in the payment of the moneys ad-

vanced to the said John Peyree, and such deeds constitute mortgages; that at the time of said transfers, to wit, on the 3d day of November, 1920, and at the time said transfers were accepted by the said defendant, J. B. Peyree, said J. B. Peyree did not know that defendant John Peyree was insolvent, or that said defendant John Peyree intended thereby to create a preference, nor did said defendant J. B. Peyree have such reasonable cause to believe that the said John Peyree was insolvent or intended thereby to create a preference, nor did the said defendant J. B. Peyree at said time have sufficient knowledge or information to put him upon his inquiry as to the financial condition of the said John Peyree or as to his intention in making said deeds, and that the said J. B. Peyree, in accepting said deeds as security, acted in good faith."

The assignments of error relate to the admissibility of evidence, and to the findings set forth above.

Our discussion on the merits did not go beyond the assignments of error. For the purpose of this opinion, we shall assume that the petition is based upon an assignment of error involving Section 67e of the federal Bankruptcy Act (U. S. Comp. Stats., § 9651). Plaintiff not only attempted to prove that the father knew his son to be insolvent, but he undertook to prove that no consideration at any time passed from father to son for the conveyances. His contention was defeated, however, by the evidence, which clearly established a pre-existing and present valuable consideration. The testimony showed that the making and delivery of the deeds was the culmination of a contract long in existence.

15, 16. Now, referring to the cause of suit based upon the alleged fraud of John Peyree: The plaintiff failed to prove as an essential element of his cause of suit

that the son made the conveyance to the father with the intent and purpose of defrauding creditors. Such proof is a prerequisite of the annulment of a conveyance of property on the ground that the transfer was made to defraud creditors within the meaning of Section 67e of the federal Bankruptcy Act: *Coder* v. *Arts,* 213 U. S. 223 (53 L. Ed. 772, 16 Ann. Cas. 1008, 29 Sup. Ct. Rep. 436, 22 Am. Bankr. Rep. 15, see, also, Rose's U. S. Notes). To establish his cause, plaintiff placed each of the then codefendants upon the witness-stand. They failed to support his averments of fraud.

"When a party producing a witness calls him to the stand, he thereby represents him to the court as worthy of credit, or at least not so infamous as to be wholly unworthy of it." *State* v. *Steeves,* 29 Or. 85, 103 (43 Pac. 947, 952).

To like effect is *Gowan-Lenning-Brown Co.* v. *Kingman* (Or.), 242 Pac. 351, decided by this court on January 12, 1926. We find a similar situation in the case of *Chance* v. *Graham,* 76 Or. 199 (148 Pac. 63). In that case the plaintiff called the defendant as a witness. Concerning such procedure, this court, speaking through Mr. Justice BURNETT, said:

"The plaintiffs called as their first witness the defendant Marion C. Young, thereby vouching for his credibility."

17. Under the federal Bankruptcy Act, deeds or mortgages executed within four months prior to the filing of a petition in bankruptcy are not *prima facie* fraudulent. The burden of proving that the transaction is fraudulent is upon the person instituting the suit to annul the transfer: *Halbert* v. *Pranke,* 91 Minn. 204 (97 N. W. 976, 11 Am. Bankr. Rep. 620).

In *Coder* v. *Arts,* 152 Fed. 943, 947 (82 C. C. A. 91, 15 L. R. A. (N. S.) 372), we find the following illuminating exposition of the provisions of Section 67e from the pen of Judge SANBORN.

"It is every intent to hinder, delay, or defraud creditors unlawfully only, not every intent to hinder or delay them, that avails to avoid a transfer made for a pre-existing debt under Section 67e. * * A transfer made in good faith to pay or to secure an honest antecedent debt by an insolvent within four months of the filing of a petition in bankruptcy by or against him constitutes no evidence of an intent on his part to hinder, delay, or defraud other creditors, within the meaning of Section 67e of the Bankruptcy Law, notwithstanding the fact that its necessary effect is to hinder and delay them, and to deprive them of the opportunity they otherwise might have had to collect their claims in full."

That case was appealed to the Supreme Court of the United States, where Mr. Justice DAY, in rendering the opinion, wrote:

"What we hold is that, to constitute a conveyance voidable under Section 67e, actual fraud must be shown." *Coder* v. *Arts,* 213 U. S. 223 (53 L. Ed. 772, 16 Ann. Cas. 1008, 29 Sup. Ct. Rep. 436, see, also, Rose's U. S. Notes).

That the transfer of the real property involved herein was made by John Peyree to J. B. Peyree with the intent upon the part of John to defraud his creditors is not established by the evidence submitted by plaintiff.

The petition for rehearing is denied.

REHEARING DENIED.

McBRIDE, C. J., and BEAN and BELT, JJ., concur.