STACH CONSTRUCTION COMPANY, et al,
*Appellants,*

*v.*

JACKSON, et al, *Respondents.*

(No. 75-72-E, CA 10850)

594 P2d 1289

Karen C. Allan, Medford, argued the cause for appellants. With her on the brief was Frohnmayer, Deatherage, Foster & Purdy, Medford.

Gene L. Brown, Grants Pass, argued the cause for respondents Wilma Jackson, and E. W. Mignot and Peggy Mignot. With him on the brief was Brown, Hughes, Bird & Lane, Grants Pass.

No appearance for respondent Kenneth E. Jackson.

Before Schwab, Chief Judge, and Buttler and Joseph, Judges.

BUTTLER, J.

**BUTTLER, J.**

Plaintiffs brought this action to set aside a conveyance of real property by defendants Jackson to defendants Mignot, contending that it was in fraud of their rights as creditors. The trial court entered a decree for defendants, and plaintiffs appeal. Because this is a proceeding in equity requiring *de novo* review on appeal, *Nelson v. Hansen*, 278 Or 571, 573-74, 565 P2d 727 (1977), we recite the relevant facts in some detail.

Defendant Kenneth Jackson was a subcontractor working in collaboration with plaintiff Stach, as prime contractor, on a road construction job for Douglas County. The county found Jackson's work to be unsatisfactory and caused Stach to terminate his subcontract. When Jackson asked Stach for the money he believed was due him, Stach contended that there had been a cost overrun exceeding $68,000 that was directly attributable to Jackson's failure to perform adequately and promptly, and refused to pay him.

Jackson sued plaintiff St. Paul Fire & Marine Insurance Company, Stach's bondsman for the county project, in the United States District court for the District of Oregon to recover the reasonable value of the work he had done for Stach. Jackson appeared *pro se* in that action. Stach and the county were brought in as third party defendants; Stach and St. Paul thereupon filed counterclaims against Jackson for the recovery of the amount each claimed to have lost by reason of Jackson's alleged default under the subcontract. On October 12, 1971, the federal court dismissed Jackson's complaint and also the counterclaims asserted by Stach and St. Paul.

Stach appealed; Jackson made no appearance. While that appeal was pending, the Jacksons conveyed their home and surrounding property to the defendants Mignot for approximately $46,000, the amount necessary to pay off an outstanding mortgage then in

[251]

default, plus the back taxes; as part of that transaction, the Jacksons were given a six-month option to repurchase at the same price, plus interest at the rate of 8 1/2% per year. The deed and option agreement were recorded almost immediately thereafter. It is this transaction, consummated in October of 1972, which plaintiffs seek to set aside in the instant case. About 1 1/2 years later, Stach and St. Paul prevailed on their counterclaims in the federal court action, and their judgment against Jackson remains unsatisfied.

The trial court found, and we agree, that Jackson's stated reasons for conveying the property were credible and that the evidence of the circumstances surrounding the conveyance supported the reasons given. Jackson testified that he thought the conveyance was necessary in order to avoid foreclosure of the mortgage on the property. The bank had exercised its right to accelerate repayment of the loan and Jackson had been unable to meet the bank's demand for payment in full of the mortgage debt. He had tried unsuccessfully to borrow money, both from institutional and private lenders, to save the property. Further, his account had been turned over to the bank's attorney to begin foreclosure proceedings. Jackson testified that if a foreclosure had been commenced, he would not only have lost the property, but the proceedings would have generated publicity that would have jeopardized his reelection as a Josephine County Commissioner.

■ At the outset, defendants contend that since the federal district court had dismissed plaintiffs' claims against Jackson, plaintiffs were not creditors at the time of the conveyance, and therefore the conveyance could not have been fraudulent as to them. While it is true that a judgment in a trial court is *res judicata* until reversed on appeal or vacated in some manner provided by law, *Chesapeake & Ohio R. R. Co. v. McCabe*, 213 US 207, 29 S Ct 430, 53 L Ed 765 (1909), it does not follow that it operates to deprive the losing party of the status, pending the appeal, of a creditor

for purposes of setting aside a conveyance as fraudulent. No Oregon case has addressed this question. The language of ORS 95.070[1] is broad, extending the right to set aside conveyances to "creditors or other persons [having] lawful suits, damages, forfeitures, debts or demands * * *." In rejecting a number of arguments maintaining that a claim was not sufficiently mature or unripe to permit the party asserting the claim to invoke the protections of ORS 95.070, Oregon courts have repeatedly construed "creditor" liberally to include anyone with a cause of action for damages, even though not yet reduced to a judgment at the time of the conveyance. *E.g., Fernandez v. Zullo*, 263 Or 13, 17-18, 500 P2d 705 (1972), *citing Seed v. Jennings*, 47 Or 464, 467-68, 83 P 872 (1905); *Sitton v. Peyree et al*, 117 Or 107, 118-19, 241 P 62, 242 P 1112 (1926); *United States Nat. Bank v. Thebaud*, 65 Or 317, 320, 132 P 1168 (1913); *Crawford v. Beard*, 12 Or 447, 8 P 537 (1885).

We conclude that where, as here, the questioned conveyance was made while a claim against the transferor was pending, even on appeal from an adverse judgment, the claimant has standing to challenge the conveyance after he has obtained a judgment against the transferor. We need go no further here.

■■ The sale, while it may not have been the most prudent from a financial standpoint, was a distress sale. The Jacksons' choice was between "a rock and a whirlpool." Under the terms of the sale, they not only avoided foreclosure with the anticipated adverse publicity, but they retained the right to remain on the

---

[1] ORS 95.070 provides:

"Every conveyance or assignment in writing or otherwise of any estate or interest in lands, goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered with the like intent, as against the person so hindered, delayed or defrauded is void."

property rent-free for at least the six-month option period. They also kept alive for six months the opportunity to sell the property to a third party at a higher price. Both of those rights are valuable ones. It is true that they would have had one year to redeem from a judicial foreclosure, but they could not have remained on the property rent-free.

A debtor is not required to make the "best" judgment as to his handling of the property, only a good faith one. The trial judge expressly found that Jackson was credible, and we defer to that judgment. *Bogle v. Paulson*, 185 Or 211, 228, 201 P2d 733 (1949); *McCoy v. McCoy*, 28 Or App 919, 562 P2d 207, 29 Or App 287, 563 P2d 738 (1977). In addition to the testimony of Jackson and the objective evidence related above which supports it, the Mignots expended over $38,000 between the time of the conveyance and the trial maintaining and improving the property, in addition to paying the taxes and insurance. Such expenditures are not expected of one who thinks he is a party to a transaction which could be set aside.

All things considered, it is difficult to understand how plaintiffs think they have been defrauded, hindered or delayed. It is apparent that if the Jacksons had done nothing, the mortgage would have been foreclosed and the redemption period would probably have expired prior to plaintiffs' obtaining a judgment. Even if the Jacksons had sold their redemption rights, there is nothing in the record to indicate how much they might have realized. Only one-half of the proceeds would have belonged to Mr. Jackson because the property was owned as tenants by the entireties, *see Panushka v. Panushka*, 221 Or 145, 349 P2d 450 (1960), and he would have been free to spend the money.

Had the Jacksons been able to ward off foreclosure, plaintiffs would have had the right to levy execution against the interest of only one of the tenants by the entirety, subject to the mortgage and to homestead

rights. *See Smith v. Popham*, 266 Or 625, 513 P2d 1172 (1973). The same would be true if we were to hold that the deed to the Mignots was a security transaction (which no one contends, and we do not decide). The right to levy execution against one tenant by the entirety is more theoretical than real.

Affirmed.